TOWN OF BELHAVEN v. LONNIE L. HODGES, CLAUDE D. HODGES, ZELMA N. HODGES AND EUNICE R. HODGES.

(Filed 18 September, 1946.)

**1. Boundaries § 5h—**

Ordinarily a corner or line called for in a junior deed will not be controlling in establishing a corner or line in a prior deed, if the corner or line can be ascertained from the description in the prior deed.

**2. Same: Boundaries § 5d: Appeal and Error § 39e—**

Testimony as to declarations made by a deceased owner of land adjacent to the land of plaintiff as to the location of the corner between their

lands, which corner was material in establishing the corner between the lands of plaintiff and defendants by reversing the first call in plaintiff's deed, even though such testimony is incompetent because decedent's deed was junior to that of plaintiff, cannot be held harmful when it appears that decedent at that time pointed out the iron stake as marking the corner of the plaintiff's property, and that other witnesses for both plaintiff and defendants testified without objection as to the location of the line between decedent and plaintiff.

**3. Boundaries § 3c—**

Where the beginning corner is not marked and is in dispute, it is permissible for the surveyor to begin at the second corner when it is known or established and reverse the first call in the deed in order to locate the beginning corner. Appellants' contention in this case that the second corner was neither known nor established is untenable.

**4. Boundaries § 10—**

In this processioning proceeding, plaintiff's evidence tending to establish the dividing line as contended for by him, between his land and that of the defendants, *is held* sufficient to sustain the verdict of the jury in plaintiff's favor.

APPEAL by defendants from *Thompson, J.,* at February Term, 1946, of BEAUFORT.

This action was tried as a processioning proceeding to establish the boundary line between adjacent lands of the Town of Belhaven and the defendants.

The defendants were restrained from using the property now in dispute, 15 January, 1945.

The pertinent facts are as follows:

The respective parties claim title from a common source, namely, W. J. Bullock.

The lot now owned by defendants was conveyed to one George L. Swindell, 20 September, 1901, and described by metes and bounds as follows: "Beginning on Front Street 50 feet from the L. Latham Northwest corner, running with said Street North 43 West 50 feet to L. W. Cox line; thence South 47 West with said Cox line to the deep waters of Pantego Creek; thence South 43 East 50 feet; thence North 47 East to Front Street, the Beginning; it being the westwardly half of a lot purchased by J. M. Lupton of L. W. Cox and wife, May 28, 1901."

Swindell conveyed this lot to Thos. E. Adams and Adams conveyed it to Anna M. Montgomery in 1925, and described it as follows: Located in the Town of Belhaven, Beginning on Front Street 50 feet from L. Latham's Northwest corner; running with said street North 43 West 50 feet to the line of the Town of Belhaven; thence South 47 West with said line, etc.

W. O. Montgomery and wife, Anna M. Montgomery, conveyed the property to Reuben Williams in 1926, and Reuben Williams and wife

conveyed the property to the defendants in 1940, and described the property as follows: "Commencing at an iron stake on the South side of Front Street, on a line between the Montgomery property and the property of J. M. Lupton Estate; thence running South 47 degrees West along the Lupton line to Pantego Creek; thence in a northerly direction following the meanders of Pantego Creek to the line of the Town Dock property; thence North 47 degrees East to Front Street, to the beginning. It being the same property which was conveyed to the said Reuben Williams by W. O. Montgomery and wife by deed dated April 26, 1926, and duly recorded in the office of the Register of Deeds of Beaufort County, in Book 256, at page 195, to which reference is made for a more complete description."

On 30 April, 1907, William T. Kirk and wife conveyed to the Town of Belhaven a lot described by metes and bounds as follows: "Beginning on Front Street at George L. Swindell's northwest corner and running North 43 West with said street a distance of 80 feet; thence South 47 West to Pantego Creek; thence along and with the waters of said Creek 80 feet in a southerly direction; thence North 47 East with George L. Swindell's line to the Beginning; it being the same lot or parcel of land conveyed by Alice K. Smith and others to William T. Kirk, by deed dated August 12, 1905, and duly recorded in the Register's office of Beaufort County in Book 132, page 496, to which reference is hereby made."

H. R. Keaton, on 3 November, 1925, purchased a lot adjoining the property of the Town of Belhaven described as follows: "Adjoining the lands of William T. Kirk on the North, and others, bounded as follows, viz.: Beginning at William T. Kirk's Northwest corner at Front Street; running with the said street 125 feet to a stake set up at the road leading to W. E. Muir's Oyster House; thence with said road South 47 West 200 feet to a stake set up; thence about Southwest 80 feet; thence 47 West to the Channel of Pantego Creek; thence Southeast 50 feet or to the line of William T. Kirk; thence with said line North 47 East to the Beginning at Front Street."

The deeds from the original grantor, as well as those to the present owners, including *mesne* conveyances for the respective properties involved herein, were introduced in evidence.

The defendants are the present owners of the property described above as the Swindell lot and Mrs. J. M. Lupton is the owner of a lot having a frontage of 50 feet on Front Street adjacent to the East of the Swindell lot. The defendants own other property to the east of the Lupton property and adjacent thereto, fronting on Front Street.

H. L. Rayburn, a registered surveyor, witness for the plaintiff, testified that he made a survey for the defendants of their property in 1943, and one for the Town of Belhaven of its Town Dock lot in 1944. He

further testified he collaborated with Blake C. Lewis, registered surveyor, in the preparation of a map showing the measurements of the properties involved and the contention of the parties, for use in the trial of this cause; and that there was no difference in the measurements on the Lewis map and his surveys in 1943 and 1944.

The Lewis map, bearing the date 30 November, 1945, designates by the letter K. the northwest corner of the Latham property, now the property of the defendants, lying east of the Lupton property, and the northeast corner on Front Street of the Lupton property, at which point is a U. S. Coastal Geodetic monument. The map designates by the letter A. a point in the southern margin of Front Street 50 feet west of the point designated by the letter K., as the northeast corner of the Swindell or Hodges lot, which lies west of the Lupton property. The letter B. is shown on the map at an iron stake in the margin of Front Street, 50 feet west of the point designated by the letter A. The letter C. designates a point at an iron stake in the margin of Front Street 17.8 feet west of the point designated by the letter B.

There is an iron stake in the margin of Front Street 79.8 feet west of the point designated on the map by the letter B. and 62 feet west of the point designated by the letter C., which iron stake the Town of Belhaven claims is its northwest corner and H. R. Keaton's northeast corner. The respective parties are claiming the land which lies between the points designated on the map by the letter B., and the letter C. on Front Street, 17.8 feet in width and extending 610 feet to Pantego Creek. The eastern line of this strip is designated on the map by a line from the letter B. to the letter H. and the western line by a line from the letter C. to the letter G.

The witness Rayburn testified that in making his survey of the properties owned by the defendants in 1943, that the defendant Claude D. Hodges and Mrs. J. M. Lupton agreed that Mrs. Lupton owned the 50 feet on Front Street, beginning at the point designated by the letter K., the location of the U. S. Coastal Geodetic monument. That he started at the point designated by the letter K., and placed a stake at the point designated by the letter A., 50 feet West of the point designated by the letter K., and then ran north 43 west 50 feet to the line of the Town of Belhaven, which line is designated on the map by the letter B. In 1944, he surveyed the Town lot, and no marker having been placed at the northeast corner of the Hodges property, the point designated as the beginning point in the Town's deed, he began at the point designated on the court map by the letter D., the second corner of the Town's property, the beginning corner in the description of the Keaton lot, and reversed the first call in the Town's deed, which fixed the northeast corner of the Town's lot at the point designated on the map by the letter B., a distance of 80 feet from the point designated by the letter D. This

MAP OF THE
COURT SURVEY IN THE CASE OF
TOWN OF BELHAVEN N.C.
vs
L. L. HODGES ETALS

SCALE 1-IN = 60 FT.    NOV. 30, 1945
BLAKE C LEWIS
REG. SURV

witness testified that the iron stake, designated by the letter D. on the court map was pointed out to him by H. R. Keaton, who is now dead, as his northeast corner and as the northwest corner of the Town Dock property.

Evidence was introduced to the effect that predecessors in title to the Hodges lot paid rent to the Town of Belhaven over a long period of time for the strip of land now in dispute. The last rental payments were made to the town in July, 1937.

W. O. Montgomery erected a small building partly on the strip of land now in dispute and partly on the land of the defendants. This building is now used by the defendants as an office building.

We deem it unnecessary to quote other evidence in the statement of facts, since the defendants have abandoned all their exceptions except those directed to the testimony of H. L. Rayburn, as to statements made by H. R. Keaton to him as to the location of the dividing line between the plaintiff and Keaton and the survey based thereon.

The jury found the true dividing line between the lands of the plaintiff and the lands of the defendants to be as indicated by the line running from the point designated by the letter B. to the letter H., on the map made by Blake C. Lewis, registered surveyor, on 30 November, 1945. Judgment was entered accordingly. Defendants appeal, assigning error.

D. D. Topping and Rodman & Rodman for plaintiff.
Carter & Carter for defendants.

DENNY, J. The appellants present only two questions for our consideration and determination: (1) Is the testimony of H. L. Rayburn, as to the statement made to him by H. R. Keaton, now deceased, as to the location of the dividing line between the lands of the Town of Belhaven and H. R. Keaton competent? (2) Can a surveyor disregard the beginning point in a deed and start his survey at the second call of the deed, when such point is neither known nor established, and is his testimony based upon such survey competent evidence?

Ordinarily a corner or line called for in a junior deed will not be controlling in establishing a corner or line in a prior deed, if the corner or line can be ascertained from the description in the prior deed. *Thomas v. Hipp*, 223 N. C., 515, 27 S. E. (2d), 528; *Jarvis v. Swain*, 173 N. C., 9, 91 S. E., 358.

We do not think, however, exception to the testimony of Mr. Rayburn, the surveyor, relative to statements made to him by Mr. Keaton, as to the location of his northeast corner can be sustained. Mr. Keaton, according to the testimony of Mr. Rayburn, also pointed out to him the iron stake, designated on the court map by the letter D., as the northwest

corner of the Town Dock lot. Moreover, witnesses for the plaintiff and the defendants testified without objection, as to the location of the line between the Keaton lot and the Town Dock lot. In fact, it does not appear on this record that there is any dispute as to the location of the northwest corner of the property of the Town of Belhaven. Therefore, if we consider the evidence relative to the statements made by Keaton as to his own corner, was erroneously admitted, it was harmless error in the light of other testimony admitted without objection. *Yadkin Motor Co. v. Insurance Co.,* 220 N. C., 168, 16 S. E. (2d), 847; *Edwards v. Junior Order,* 220 N. C., 41, 16 S. E. (2d), 466; *McKay v. Bullard,* 219 N. C., 589, 14 S. E. (2d), 657; *Teseneer v. Mills Co.,* 209 N. C., 615, 184 S. E., 535; *Shelton v. R. R.,* 193 N. C., 670, 139 S. E., 232; *Hamilton v. Lumber Co.,* 160 N. C., 47, 75 S. E., 1087.

In considering the second question presented, we think the appellants are in error in assuming that the surveyor, in making the survey of the property of the Town of Belhaven, started at a point that is neither known nor established.

The sole question for the jury to determine upon the evidence in this case was which one of the lines in dispute is the dividing line between the property of the plaintiff and the defendants. In order to correctly decide the issue it became necessary for the jury to ascertain the true location of the beginning corner of the property of the Town of Belhaven, which is the northwest corner of the property of the defendants. The location of the beginning corner, not being marked and in dispute, it was permissible for the surveyor to reverse the first call in the Town's deed, beginning at what is known or established as the northwest corner of the Town Dock lot, in order to locate the beginning corner. This Court said, in *Cowles v. Reavis,* 109 N. C., 417, 13 S. E., 930: "It is too clear to need citation of authorities that if the beginning corner has been destroyed, as in this case, it is competent, in order to ascertain the true boundary to survey the land by beginning at any known corner or point from which the boundaries may be located." *Norwood v. Crawford,* 114 N. C., 513, 19 S. E. 349. And in *Jarvis v. Swain, supra,* the Court said: "The rule is, in running the calls of a deed, to begin at the beginning corner if it is known or established, and to follow the calls in their regular order, and it is said in *Harry v. Graham,* 18 N. C., 76, and approved in *Gunter v. Mfg. Co.,* 166 N. C., 166, that there is no case in our reports where the Court has given its sanction to the correctness of a survey made by reversing the lines from a *known* beginning corner; but it is equally well established that if the beginning corner is uncertain and the second corner is known or established, that the first line may be reversed in order to find the beginning; and the same rule prevails as to the other corners and lines. *Dobson v. Finley,* 53 N. C., 495; *Norwood v. Crawford,* 114 N. C., 513; *Clark v. Moore,* 126 N. C., 1; *Hanstein*

v. *Ferrall*, 149 N. C., 240." See also *Cornelison v. Hammond*, 224 N. C., 757, 32 S. E. (2d), 326, and the cases cited therein.

Furthermore, it is disclosed by the documentary and oral testimony that the Swindell lot, now the property of these defendants, and the Lupton lot, have a frontage on Front Street of only 50 feet each, and the northwest corner of the Swindell lot, according to the documentary evidence, is north 43 west 100 feet from the U. S. Coastal Geodetic monument, designated on the court map by the letter K. Also, Mr. Rayburn testified that the point on the map designated by the letter B., is the point shown as the line of the Town lot in his 1943 survey, measuring from the point designated by the letter K., or the U. S. Coastal Geodetic monument, which was pointed out as the northeast corner of the Lupton property by Mrs. Lupton and one of the defendants, and the point designated by the letter B. is the same point located as the beginning point of the Town lot in his 1944 survey by reversing the first call in the town's deed.

It will be noted that the town's deed calls for the northwest corner of the defendants' property as its beginning corner, and the defendants' deed merely calls for the property lying between the Lupton property and the property of the Town of Belhaven; nevertheless, the deeds to all their predecessors in title, beginning with the deed to Anna M. Montgomery, and prior thereto, call for a frontage of only 50 feet on Front Street beginning at a point 50 feet from the L. Latham corner, now designated as the U. S. Coastal Geodetic monument, or the letter K.

While the evidence is conflicting as to which is the true dividing line between the properties of the respective parties, we think there is ample evidence to sustain the verdict of the jury and we find no prejudicial error in the trial below.

No error.